NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2230-11T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DANIELLE N. DIANGELO,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

February 13, 2014

APPELLATE DIVISION

        Submitted October 17, 2013 - Decided February 13, 2014

        Before Judges Lihotz, Maven and Hoffman.

        On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 09-10-1914 and 10-11-0332.

        Joseph E. Krakora, Public Defender, attorney for appellant (Rochelle Watson, Assistant Deputy Public Defender, on the brief).

        Andrew C. Carey, Acting Middlesex County Prosecutor, attorney for respondent (Brian D. Gillet, Special Deputy Attorney General/ Acting Assistant Prosecutor, of counsel and on the brief; Matthew P. Tallia, on the brief).

    The opinion of the court was delivered by

LIHOTZ, J.A.D.

    We consider whether the scope of the Supreme Court's holding announced in State v. Hernandez, 208 N.J. 24 (2011), addressing jail credit calculations, extends to a defendant

sentenced to a custodial term for a violation of probation (VOP). In this matter, defendant Danielle N. DiAngelo was sentenced to a non-custodial probationary term, after conviction for a third-degree offense. While on probation, defendant was jailed upon arrest for a new offense and did not post bail. Probation filed an application to revoke defendant's probationary sentence and impose a custodial term for the prior conviction, then served defendant with the statement of charges while she was in custody. In the subsequent VOP hearing, defendant pled guilty. Citing Hernandez, she requested jail credits to reduce the custodial term imposed for the VOP, corresponding to the period of custody from arrest on new charges to the date of sentencing. The State argued jail credit applied only against the sentence on the new charges because defendant was arrested solely on the new offenses and the custodial term for the VOP was related to and part of the initial sentence for her prior offense. The judge agreed and concluded the VOP sentence was not a sentence to which Rule 3:21-8 (or the Rule) applied.

Following our review, we reject the State's argument, which suggests the terms of defendant's initial probationary sentence included incarceration in the event of a VOP, obviating consideration of jail credits for time in custody between filing

A-2230-11T1

VOP charges and imposition of a custodial sentence for violating probation. Rather, we conclude the public policy expressed by the Supreme Court in Hernandez equally applies to VOP sentences. Following this policy, we determine the issuance of the VOP statement of charges to a defendant held in custody triggers the right to receive jail credits against the VOP sentence for a defendant's period of pre-adjudication custody, as well as against the new offense, irrespective of whether a VOP summons or warrant was issued. Accordingly, the trial court's order denying defendant's application for jail credits against her VOP sentence is reversed.

## I.

As a result of an incident occurring on July 17, 2009, defendant was arrested and charged under Middlesex County Indictment No. 09-10-1914.[1] On January 20, 2010, she pled guilty to third-degree forgery, N.J.S.A. 2C:21-1(a)(2), for which a four-year non-custodial probationary sentence was imposed.

On August 27, 2010, defendant was arrested for a separate forgery offense committed during the prior month.[2] She waived

---

[1] Defendant was arrested on August 3, 2009, and posted bail on August 7, 2009. The judgment of conviction reflected five days jail credit.

[2] Defendant was released on bail on October 30, 2010, and the judgment of conviction reflects sixty-five days jail credit.

indictment and pled guilty to third-degree forgery, as charged in Middlesex County Accusation No. 10-11-0332. She was sentenced on this charge on December 20, 2010. At sentencing, defendant also pled guilty to a VOP, related to Indictment 09-10-1914.

At the time of sentencing on the Accusation and VOP, the Middlesex County judge was informed Monmouth County Indictment 10-12-2333 had been returned against defendant five days earlier. The Monmouth County indictment, which was based on events occurring in Millstone between July 22 and July 26, 2010, charged defendant with three third-degree offenses: forgery, N.J.S.A. 2C:21-1(a)(2), uttering a forged instrument, N.J.S.A. 2C:21-1(a)(3), and theft by unlawful taking, N.J.S.A. 2C:20-3(a).[3] The Middlesex County judge imposed a sentence continuing defendant's probation on Indictment 09-10-1914. On Accusation No. 10-11-0332, he imposed a concurrent three-year probationary term.

On May 9, 2011, defendant was again arrested on a bench warrant regarding Monmouth County Indictment No. 10-12-2333.

---

[3]    On March 19, 2011 defendant was arrested for possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1), under Middlesex County Accusation No. 11-06-220. This charge was later dismissed when she provided a valid prescription for the possessed medication.

A-2230-11T1

She did not post bail and remained incarcerated. She pled guilty to two counts of that indictment.

On May 23, 2011, while defendant was incarcerated on the Monmouth charges, Middlesex County Probation moved to revoke probation on Middlesex County Indictment 09-10-1914 and Accusation No. 10-11-0332, in part because defendant had violated probation for a second time and "failed to remain offense-free while under active [p]robation supervision[.]" In addition to commission of new offenses, the statement of charges identified additional reasons to revoke the probationary sentence.[4] The VOP summary stated defendant was "entitled to a total number of 5 day[s] [j]ail [c]redit for 09-10-01914-I and 65 days [j]ail [c]redit for 10-11-00332-A." On June 30, 2011, defendant pled guilty to violating the terms of her probation imposed on Indictment 09-10-1914 and Accusation 10-11-0332.

Defendant also pled guilty on August 5, 2011, to two of the three Monmouth County charges and was sentenced to three years in prison on each conviction, to be served "concurrent to each other and concurrent" to the sentence on Middlesex Indictment No. 09-10-1914 and Accusation 10-11-0332. She was awarded jail

---

[4] These reasons were defendant's failure to: report as required, provide documentation of drug and alcohol evaluations, verify employment, provide drug screens, and pay the balance of ordered fines.

credit against the sentence imposed on the Monmouth County convictions for the custodial periods of March 23 to April 5, 2011, and May 9 to August 4, 2011, a total of 102 days.

During the VOP sentencings, held on September 8, 2011, the State requested imposition of a custodial term. The VOP judge agreed, terminated defendant's probation, and sentenced her to a three-year custodial term for each conviction, to run concurrently with each other, and concurrently to her Monmouth County sentences.

In addition to the jail credits identified on the prior judgment of convictions, defendant requested additional credit from May 23, 2011, when the Middlesex VOP was filed, to August 5, 2011, when she began serving the Monmouth County sentence.[5] The judge rejected this request and limited jail credits on Indictment 09-10-1914 to 37 days for time served from August 3 to August 7, 2009, and August 27 to September 27, 2010; and, on Accusation 10-11-0332, to 65 days for the period in custody from August 27 to October 30, 2010.[6] Defendant appealed.

---

[5] Defendant further argued she was entitled to thirty-four days of gap-time credit.

[6] We understand defendant was released from custody on December 11, 2010. Although an award of jail credits at this juncture would not affect defendant's time in custody, the appeal should not be treated as moot and dismissed because the issue is of public importance and bound to recur time and again

(continued)

A-2230-11T1

Initially, this matter was included on our October 16, 2012 Excessive Sentencing Oral Argument calendar. See R. 2:9-11. We ordered the matter relisted after full briefing, to address the impact of Hernandez on the calculation of jail credits related to a VOP sentence, asking:

> (1) whether the period "between arrest and the imposition of a sentence," Rule 3:21-8, includes any part of the period from (a) incarceration on a new charge, after imposition of the initial probationary sentence, and (b) re-sentence after a violation of probation; and if so (2) when accumulation of re-sentence jail credits, while in custody on new charges, shall be deemed to occur[.]

On appeal, defendant maintains she is entitled to jail credit against her VOP sentences for time spent in custody from May 9, 2011, when she was arrested on the Monmouth County offenses or, alternatively, from May 23, 2011, the date the VOP charges were filed, to August 4, 2011, the day before her sentencing on the Monmouth convictions. In a single argument she states:

> UNDER STATE V. HERNANDEZ, 208 N.J. 24 (2011), [DEFENDANT], WHO WAS SERVING A PROBATIONARY SENTENCE WHEN SHE WAS ARRESTED ON A NEW OFFENSE, IS ENTITLED TO JAIL

_____

(continued)
unless and until a decision determines what course should be taken. State v. Grecco, 187 N.J. Super. 421, 423 (App. Div. 1982) (citing State v. Allen, 73 N.J. 132, 138-39 (1977)). We therefore proceed to review the merits.

CREDITS AGAINST HER VIOLATION OF PROBATION
SENTENCES FOR THE ENTIRE PERIOD SHE WAS IN
PRE[-]SENTENCE CUSTODY ON THE NEW OFFENSE,
DURING WHICH THE PROBATION REVOCATION
CHARGES WERE PENDING.

The State refutes defendant's claimed entitlement to jail credits, except for the period from June 30, 2011, the acceptance of defendant's VOP guilty plea, to August 4, 2011, the day prior to sentencing on the Monmouth County convictions, noting bail would have been considered "consolidated" on the earlier date. The State also concedes defendant is entitled to thirty-four days gap-time credit from August 5 to September 7, 2011, the day before the VOP sentencing. Accordingly, we need to consider only whether jail credit must be awarded against defendant's VOP sentence for any period from her May 9, 2011 arrest on new charges to June 29, 2011.

## II.

A challenge to an award or denial of jail credits, as inconsistent with Rule 3:21-8, constitutes an appeal of a sentence "not imposed in accordance with law." State v. Rippy, 431 N.J. Super. 338, 347 (App. Div. 2013) (citation and internal quotation marks omitted). In our review, we accord no special deference to a trial judge's "'interpretation of the law and legal consequences that flow from established facts[.]'" State v. McKeon, 385 N.J. Super. 559, 567 (App. Div. 2006) (quoting

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). We review legal issues de novo.

The determination of a defendant's eligibility for jail credits, which in effect reduces the time to be served on a sentence, is governed by the Rule, as most recently interpreted by the Court in Hernandez. Consistent with the dictates of fundamental fairness, Rule 3:21-8 directs a "defendant shall receive credit on the term of a custodial sentence for any time served in custody or jail or in a state hospital between arrest and imposition of sentence." R. 3:21-8. Jail credits are so-called "day-for-day credits." Hernandez, supra, 208 N.J. at 37 (citing Buncie v. Dep't of Corr., 382 N.J. Super. 214, 217 (App. Div. 2005), certif. denied, 186 N.J. 606 (2006)). "[They] are applied to the 'front end' of a defendant's sentence, meaning that he or she is entitled to credit against the sentence for every day . . . held in custody for that offense prior to sentencing." Ibid.

Prior to Hernandez, when a defendant in custody faced multiple charges, the Rule was interpreted to provide credit "only for such confinement as is attributable to the arrest or other detention resulting from the particular offense." State v. Black, 153 N.J. 438, 456 (1998) (citations and internal quotation marks omitted). A defendant sentenced for multiple

offenses was afforded credit for presentence custody, which was matched to the criminal offense resulting in confinement. See State v. Carreker, 172 N.J. 100, 115 (2002) (declining credit against a New Jersey sentence as the defendant was already serving a New York sentence and a condition of the transfer to New Jersey for disposition of pending charges was she continue to serve the New York sentence); State v. Hemphill, 391 N.J. Super. 67, 70 (App. Div.) (limiting application of jail credits to the particular offense for which there was confinement or detention), certif. denied, 192 N.J. 68 (2007). Credit for the same days of confinement could not be awarded against more than one sentence; rather, credits were awarded only against the imposed sentence for the offense causing defendant's arrest. See In re Hinsinger, 180 N.J. Super. 491, 499 (App. Div.) (noting Rule 3:21-8 "only applies to confinement directly attributable to the particular offense giving rise to the initial incarceration"), certif. denied, 88 N.J. 494 (1981); State v. Marnin, 108 N.J. Super. 442, 444 (App. Div.) ("But time spent in custody is required to be credited only against the sentence on the charge which brought about that custody."), certif. denied, 55 N.J. 598 (1970); State v. Allen, 155 N.J. Super. 582, 585 (App. Div.) (declining to credit sentences imposed for offenses in different counties, explaining "to give

. . . credit . . . in both counties would bestow . . . impermissible double credit"), certif. denied, 77 N.J. 472 (1978), disapproved by Hernandez, supra, 208 N.J. at 49.

In some instances, credit was discretionary, awarded "'based on considerations of fairness, justice and fair dealings.'" Hernandez, supra, 208 N.J. at 37 (quoting Hemphill, supra, 391 N.J. Super. at 70 (granting credit for confinement in Scotland while awaiting extradition on New Jersey charges)). See also State v. Grate, 311 N.J. Super. 456, 458-59 (App. Div. 1998) (applying jail credits even though the defendant's incarceration was "not directly a consequence of the arrest" but "was nevertheless fairly attributable to the indictment on which he was eventually sentenced").

In Hernandez, the Court sought to resolve questions surrounding the accrual of jail credits "for time spent in presentence custody on multiple charges" after noting the denial of jail credits caused an inequity, particularly among indigent defendants unable to post bail, who remained in pre-adjudication custody on multiple offenses. Hernandez, supra, 208 N.J. at 45. "[T]he Court reasoned that uniformity in the award of jail credits is required to avoid sentencing disparity and provide equal treatment." Rippy, supra, 431 N.J. Super. at 347 (citing Hernandez, supra, 208 N.J. at 49). The application of Rule

3:21-8, as expressed in Hernandez, intends to eliminate inconsistencies in sentences by assuring the real time consequence of a sentence is not dependent upon which charge is resolved first, whether charges are embodied in a single indictment or multiple indictments, or on factors subject to the application of discretion or possible manipulation. Hernandez, supra, 208 N.J. at 48-49.

Concluding the language of the Rule was clear, the Court held "defendants are entitled to precisely what the Rule provides: credits against all sentences 'for any time served in custody[,] in jail or in a state hospital between arrest and the imposition of sentence' on each case." Id. at 28 (quoting R. 3:21-8). Thus, the Court held the Rule mandates a defendant receives jail credit for time spent in presentence custody against all sentences imposed on all convictions. Ibid. Concisely, presentence credit begins upon arrest until the first sentencing. Id. at 50. "[O]nce the first sentence is imposed, a defendant awaiting imposition of another sentence accrues no more jail credit under Rule 3:21-8." Ibid.

Hernandez did not specifically address the question here presented: that is, whether a defendant, initially arrested and held on one charge, who is then served with a VOP for committing that new offense, may receive jail credits not only against the

sentence imposed for the new offense, but also for any custodial term imposed for the VOP. We acknowledge neither the statutory scheme governing probationary sentences nor Rule 3:21-8 cedes a direct answer to this question.

"A [VOP] is the vehicle by which the probation officer brings a probationer before the court for non-compliance." Adult Violation of Probation Guidelines and Procedures, Directive #7-08 (issued April 7, 2008), 1-2 (Guidelines).[7] Prior to completion or discharge of a probationary sentence, when Probation has probable cause to believe a defendant disregarded the conditions of a probationary sentence by committing a new offense, a defendant may be arrested and held pending a hearing on the charges stated in the VOP. N.J.S.A. 2C:45-3(a)(2). See also State v. Wilkins, 230 N.J. Super. 261, 264 (App. Div.) (holding a defendant may be found to have violated probation by engaging in a new offense even before conviction of a new crime), certif. denied, 117 N.J. 84 (1989). The court may order a defendant held "without bail, pending a determination of the charge[.]" N.J.S.A. 2C:45-3(a)(3). "[T]he issuance of an arrest warrant or a summons cannot occur as a result of a mere whim, but instead must be precipitated by the preparation of

---

[7] Available at http://www.judiciary.state.nj.us/directive/2008/dir_7_08a.pdf.

underlying documentation that would support the conclusion that there is probable cause to believe defendant has violated the terms of his [or her] probation." State v. Nellom, 178 N.J. 192, 200-01 (2003). "Each of those initiatives is intended to notify [the] defendant that he [or she] is being charged with violating probation and to bring him or her before the court." Id. at 199.

"With respect to a defendant who violates a probationary condition, the initial question is whether the violation justifies revocation of probation. Some violations are more serious than others." State v. Baylass, 114 N.J. 169, 175 (1989). Once a court determines "the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order or if he has been convicted of another offense, [the court] may revoke the suspension or probation and sentence or resentence the defendant," N.J.S.A. 2C:45-3(a)(4), imposing "any sentence that might have been imposed originally for the offense of which he was convicted." N.J.S.A. 2C:45-3(b). "Thus, a probation violation, although it has no bearing on the original sentence, may affect the later 'in-out' decision whether to incarcerate the defendant." Baylass, supra, 114 N.J. at 174.

The State argues jail credits, as authorized by the Rule, are not triggered under the facts of this case. Noting the Rule grants jail credit for custodial time "between arrest and the imposition of sentence," the State contends a VOP sentence is merely a continuation of a previously imposed sentence, not a newly imposed sentence, making the Rule inapplicable. Further, the State maintains defendant's confinement was unrelated to her VOP charges because she was neither arrested nor detained for violating probation. Because defendant was incarcerated for commission of a new third-degree offense and received jail credits against that conviction for the time held, no additional credit is warranted. We examine these separate issues in more detail.

The State first contends a custodial term imposed following conviction for a VOP is merely "a resentence," which is legally distinguishable from the imposition of an initial sentence following conviction, as referenced in Rule 3:21-8. Drawing an analogy to a parole violation, the State, cites Black, supra, 153 N.J. at 461, to suggest a VOP sentence is merely part of the initial sentence to which jail credits do not apply.

Upon conviction of a VOP, our courts have referred to the imposition of "a resentence," likely in keeping with the phraseology used by the Legislature in N.J.S.A. 2C:45-3(a)(4)

(authorizing the court to "revoke the suspension or probation and sentence or <u>resentence</u> the defendant" (emphasis added)). The term "resentence" also reflects the principle that "'the sentence imposed after revocation of probation should be viewed as focusing on the original offense rather than on the violation of probation as a separate offense.'" <u>State ex rel. C.V.</u>, 201 <u>N.J.</u> 281, 297 (2010) (quoting <u>State v. Ryan</u>, 86 <u>N.J.</u> 1, 8, <u>cert. denied</u>, 454 <u>U.S.</u> 880, 102 <u>S. Ct.</u> 363, 70 <u>L. Ed.</u> 2d 190 (1981)).

Despite the label, we disagree that a sentence imposed once probation is revoked is analogous to a violation of parole. Drawing on the Court's discussion in <u>Hernandez</u>, we conclude the time spent by a probationer who is in custody awaiting adjudication for a VOP is not analogous to a defendant arrested and held for a parole violation.

"Parole is a period of supervised release by which a prisoner is allowed to serve the final portion of his sentence outside the gates of the institution on certain terms and conditions, in order to prepare for his eventual return to society." <u>Black</u>, <u>supra</u>, 153 <u>N.J.</u> at 447 (citations and internal quotation marks omitted). When "a parolee is taken into custody on a parole warrant, the confinement is attributable to the original offense on which the parole was granted and not to any offense or offenses committed during the parolee's release."

16

Id. at 461. Consequently, confinement pursuant to the revocation of parole, even if revocation resulted from commission of a new offense, is time served "only against the original sentence" because imprisonment was "attributable only to the parole violation." Id. at 456. Jail credits do not apply because confinement was "time accrued after imposition of a custodial sentence." Hernandez, supra, 208 N.J. at 44-45.

A sentence imposed following conviction for a VOP is not a continuation of the initial sentence and Black is not controlling. We conclude a custodial sentence following conviction for a VOP is a separate sentence falling within the parameters of the phrase "imposition of sentence" as used in Rule 3:21-8.

The decision to sentence a probationer to imprisonment after conviction of a VOP is the result of distinct proceedings. Baylass, supra, 114 N.J. at 172-76. A sentencing judge must identify and weigh aggravating and mitigating factors at the probation violation hearing to determine the appropriate sentence. State v. Molina, 114 N.J. 181, 183 (1989) (citing Baylass, supra, 114 N.J. at 173). In this process, whether a custodial sentence should be imposed requires a new determination, not merely ordering a custodial term

17

predetermined at the time of the initial sentencing for the underlying offense.

In a different context, the Court concluded a trial court was mistaken in believing that upon sentencing for a VOP it was bound to impose a parole disqualifier, waived by the prosecutor upon imposition of the initial probationary sentence. State v. Peters, 129 N.J. 210, 216-17 (1992); State v. Vasquez, 129 N.J. 189, 195 (1992). The Court made clear, a "defendant did not at the time of pleading guilty to the underlying offense waive the right to appeal the prosecutor's attempt to apply the parole ineligibility term to [the] defendant's sentence on violation of his probation." Vasquez, supra, 129 N.J. at 195. This approach highlights the originality of the exercise of judicial discretion, as guided by the Code of Criminal Justice, when entering a sentence on a VOP conviction. Therefore, in our view such a sentencing is like any other.[8]

Hernandez provides a more basic reason to reject the State's position that jail credits do not apply to a VOP sentence. The Court's analysis emphasized the defendant's

---

[8]   Although inapplicable to this matter, we are aware this court has drawn a distinction in the consequences upon resentencing for violation of the terms of special probation, authorized by N.J.S.A. 2C:35-14. See State v. Bishop, 429 N.J. Super. 533, 541-42 (App. Div.), certif. granted, 216 N.J. 14 (2013).

"custodial status." Hernandez, supra, 208 N.J. at 47. ("Ms. Hernandez should be entitled to jail credit . . . for the time she spent in custody between her . . . arrest and the date sentence was imposed . . . (at which time her custodial status changed by virtue of the fact she began to serve a sentence)."). Thus, Hernandez clarifies that "imposition of sentence" set forth in the Rule means a "custodial sentence," which by definition would exclude a non-custodial probationary one. Id. at 36. See also State v. Towey, 114 N.J. 69, 86 (1989) (explaining "the thrust of [Rule 3:21-8] is to restrict credit to 'custodial' confinements, either in jail or in a state hospital" which were involuntary, thus excluding a defendant's voluntary admission to a treatment hospital); Hernandez, supra, 208 N.J. at 42 (discussing Towey's holding, stating "we held the defendant's hospital confinement was not custodial within the meaning and requirements of [Rule 3:21-8])."

Having found a VOP sentence falls within the bounds of a sentence to which Rule 3:21-8 applies, entitling a defendant to jail credit for pre-adjudication confinement, we next consider the State's second argument that defendant was not arrested or confined for a VOP, precluding accrual of jail credits. Noting no detainer was lodged with the statement of VOP charges, the State advocates jail credit were properly denied because

"[d]efendant was 'in custody' . . . because of her Monmouth County arrest, not her Middlesex County VOP[.]"

The State's position embraces the fact that probation violations vary in severity such that the treatment of violations differs. The filing of a VOP is not always accompanied by an arrest warrant. We confine our review to a defendant who is in custody after commission of another criminal offense while on probation, and against whom a summons for a VOP has been issued rather than an arrest warrant.

When a defendant commits a new offense while on probation:

> (1) <u>The court may</u> summon the defendant to appear before it or may <u>issue a warrant for his arrest</u>;
>
> (2) <u>A probation officer</u> or peace officer, upon request of the chief probation officer or otherwise having probable cause to believe that the defendant has failed to comply with a requirement imposed as a condition of the order or that he has committed another offense, <u>may arrest him without a warrant</u>;
>
> (3) <u>The court</u>, if there is probable cause to believe that the defendant has committed another offense or if he has been held to answer therefor, <u>may commit him without bail, pending a determination of the charge</u> by the court having jurisdiction thereof[.]
>
> [<u>N.J.S.A.</u> 2C:45-3(a) (emphasis added).]

The <u>Guidelines</u> also state: "If a determination is made to file a VOP because of a new arrest, the probation officer shall

request the Superior Court to issue a warrant or a summons to appear . . . prior to the expiration of the term of supervision." Guidelines, supra, at 5. Further, the Guidelines direct a VOP must be filed when a probationer commits a new first or second degree offense, and filed "in most cases" when a probationer is arrested for a third or fourth degree offense. Ibid.

Despite the ideal expressed by N.J.S.A. 2C:45-1(a) and the Guidelines to achieve consistent probation supervision strategies, these provisions allow discretionary decisions on whether the probationer should be arrested pending review of the alleged VOP. Moreover, caseload efficiencies among county probation departments may vary the treatment of similarly situated probationers charged with violating the terms of probation.

The Court identified uniformity and equality as the paramount goals to be achieved in criminal sentencing. Hernandez, supra, 208 N.J. at 48-49. These goals are necessary to maintain fundamental fairness in the treatment of all defendants. More specifically, the Court directed jail credits

> must be consistently applied to promote
> uniformity in sentencing; there is no room
> for discretion in either granting or denying
> credits. Both can promote sentence
> disparity based on the lack of uniformity in
> exercising discretion. Thus, such

discretion avoids the very equal protection the Rule was designed to promote.

[Ibid.]

This is especially true for the "'presumably innocent but poor defendant' who could not make bail or conditions of pre-trial release." Id. at 36 (quoting Richardson v. Nickolopoulos, 110 N.J. 241, 249 n. 2 (1988)).

Hernandez examined two instances where the defendants were held on multiple offenses, one where charges arose in the same county, and the other where charges originated in different counties. Hernandez, supra, 208 N.J. at 28-30. As the Court expounded:

> In this context[,] it is inconceivable that two defendants sentenced to the same sentences for the same crimes in two different counties should actually serve different amounts of real time depending only on the sequence and timing of the imposition of sentence. . . . Neither the Code of Criminal Justice nor our rules of procedure contemplate that the real time a defendant is to serve in custody should turn on which case a prosecutor or court decides to move first.
>
> [Id. at 46-47.]

This pronouncement makes clear that the overarching public policy must be to provide consistency in awarding jail credits to achieve fairness in sentencing to all.

When viewed in such a light, we are hard-pressed to agree that application of jail credits among defendants similarly situated should vary because Probation requested a warrant or detainer for one, but only served a statement of charges to another. Hernandez directs such sentencing disparity be eliminated. Id. at 48-49.

Here, defendant's commission of new third-degree offenses could have subjected her to arrest for violating probation, yet her circumstances of detention on the new charges may have mitigated the need to also seek an arrest warrant for the VOPs. This type of discretionary determination should not preclude her entitlement to jail credit on the VOP sentence because she actually was in custody awaiting adjudication on both her new charge and the VOP. Ibid. Under these circumstances, Hernandez constrains allowing an exercise of a discretion — the request to arrest or detain for the VOP — to impact the real time consequences of a defendant's sentence. Id. at 46-47.[9]

Accordingly, when a VOP statement of charges for a commission of a first, second, third or fourth degree offense is

_____

[9] Our determination is limited to defendants held prior to adjudication. Certainly, had defendant made bail after being arrested on the Monmouth County charges prior to issuance of the VOP statement of charges, which were not accompanied by a request for an arrest warrant, the issue of awarding jail credit on the VOP would not arise.

served on a confined defendant, the statement of charges serves as the substantial equivalent of an arrest as used in Rule 3:21-8. The serving of the statement of charges to a defendant who is confined triggers the award of jail credits for the period of pre-adjudication confinement against the VOP sentence and the sentence for the new offense. See Hernandez, supra, 208 N.J. at 36 (stating "'Rule 3:21-8 expresses the public policy of the State and should be liberally construed'" (citing State v. Beatty, 128 N.J. Super. 488, 491 (App. Div. 1974))). We stress the requirement is to award jail credits against sentences for all charges causing pre-adjudication confinement, and to avoid parsing custodial credit among charges resulting in confinement.

As to when the jail credit clock commences, defendant urges credit accrue with her arrest for the new charges. She maintains this date provides certainty and insures fundamental fairness, eliminates the possibility of sentencing disparity. See Hernandez, supra, 208 N.J. at 48-49. Defendant also contends other events, such as the filing of the statement of charges, detainer, probation chief's warrant, bench warrant, or court order to be held without bail, "are all subject to vagaries" of negligent delay or willful manipulation.

We reject defendant's assertion credit against the VOP sentence begins upon her arrest on new charges. The Court's

24

direction in Hernandez that jail credits commence upon arrest, id. at 47-49, must be viewed in the context of the circumstances examined. Ms. Hernandez was denied jail credit against the sentence imposed for the conviction on charges causing her initial arrest. Id. at 28-30. Consequently, the pre-custodial period for which credit was sought commenced with the defendant's arrest. Ibid. Unlike Hernandez, defendant's request in this case to grant credit upon arrest would include a period of time preceding the submission of the VOP statement of charges. We cannot sanction the award of jail credit prior to the filing of the VOP charges.

The more appropriate date for credit against the VOP sentence is the date the VOP statement of charges issued. We accept this date primarily because VOPs do not automatically issue, but must be supported by probable cause. Wilkins, supra, 230 N.J. Super. at 264 (providing evidence of alleged criminal conduct, prior to conviction, is sufficient to support VOP). Therefore, Probation cannot pursue a VOP until and unless it has probable cause of a defendant's violation of probation. We are satisfied the Guidelines sufficiently direct the timing of the filing of VOPs to insure charges will not be delayed once Probation learns a defendant has committed a new offense. Absent a showing of an abusive exercise of authority, it would

A-2230-11T1

be unreasonable to grant defendant credit for the custodial time elapsing prior to the filing of a VOP statement of charges.

Here, defendant was arrested on the Monmouth County charges on May 9, 2011. The statement of charges for the VOP was filed on May 23, 2011. Defendant is entitled to seventy-four days jail credit from May 23 to August 4, 2011, which includes the period conceded by the State from June 30 to August 4, 2011. The JOC must be amended to reflect these credits, as well as the agreed thirty-four days gap-time credit, for August 5 to September 8, 2011.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION