69 A.3d 153

## STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT/CROSS–APPELLANT, v. JAMES RIPPY, DEFENDANT–APPELLANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted May 22, 2013—Decided June 21, 2013.

Before Judges GRALL, SIMONELLI and ACCURSO.

*Joseph E. Krakora,* Public Defender, attorney for appellant/cross-respondent (*Rochelle Watson,* Assistant Deputy Public Defender, of counsel and on the brief).

*Andrew C. Carey,* Acting Middlesex County Prosecutor, attorney for respondent/cross-appellant (*Joie Piderit,* Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

GRALL, J.A.D.

The primary issues presented on this appeal and cross-appeal involve the award of jail credits on four indictments that were pending for several years. We hold: that the State may appeal an award of jail credits on the ground that they are not authorized by *Rule* 3:21–8; that a defendant subject to multiple charges who has been sentenced on only one indictment is entitled to jail credits for a period of confinement that follows reversal of the convictions underlying the first sentence and precedes the first sentencing following the reversal; and that jail credits for such confinement are due on all indictments pending at the time.

Following reversal of defendant James Rippy's convictions on an indictment charging him with first-degree robbery and related

offenses, he accepted a plea agreement resolving four indictments charging him with crimes committed in 2002 and 2003. Pursuant to that agreement, in February 2011 defendant pled guilty to two counts of first-degree robbery, *N.J.S.A.* 2C:15–1, one charged in Indictment 02–09–1179 and another charged in Indictment 08–06–1065 (superseding Indictment 03–03–0426); second-degree burglary, *N.J.S.A.* 2C:18–2, charged in Indictment 08–06–1064 (superseding Indictment 02–10–1342); and bail jumping, *N.J.S.A.* 2C:29–7, charged in Indictment 08–03–0493. All of these indictments were returned by the grand jurors for Middlesex County.

On May 20, 2011, the judge sentenced defendant to terms of imprisonment on each count all to be served concurrently with one another. The judge imposed twenty-year terms for each of the two first-degree robberies that are subject to periods of parole ineligibility and supervision mandated by the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2; a ten-year term for second-degree burglary; and a four-year term for bail jumping.

At sentencing, the State and defendant had divergent views on the amount of jail credits the judge could award. This sentencing preceded the Supreme Court's decision in *State v. Hernandez,* 208 *N.J.* 24, 26 *A.*3d 376 (2011), by nineteen days, but in this case *Hernandez* applies because defendant and the State disputed the amount of jail credits at sentencing. *Id.* at 50–51, 26 *A.*3d 376. Accepting defense counsel's argument that the award of jail credits is discretionary, the judge did not address either *Rule* 3:21–8, which governs jail credits, or *N.J.S.A.* 2C:44–5b, which governs gap-time credits. In several respects, the jail credits awarded deviate from those mandated by *Rule* 3:21–8, as interpreted in *Hernandez.* Some of the deviations are in defendant's favor and some are to his disadvantage.

On appeal, defendant argues that his twenty-year sentences for first-degree robbery are excessive and opposes the State's cross-appeal of the jail credits awarded. Specifically, he contends:

I. BECAUSE THE AWARD OF DISCRETIONARY JAIL CREDITS DOES NOT RENDER [THE] SENTENCE ILLEGAL, THE STATE'S APPEAL

MUST BE DISMISSED. ALTERNATIVELY, ASSUMING THE STATE HAS STANDING TO APPEAL, THE AWARD OF DISCRETIONARY CREDITS WAS ENTIRELY WITHIN THE SENTENCING JUDGE'S AUTHORITY AND [WAS] WARRANTED UNDER THE UNIQUE CIRCUMSTANCES OF THIS CASE.

II. [THE] TWENTY-YEAR SENTENCES ON THE FIRST-DEGREE ROBBERY CONVICTIONS ARE MANIFESTLY EXCESSIVE.

On its cross-appeal and in response to defendant's challenge to his sentence, the State argues:

I. THE SENTENCE IMPOSED WAS ILLEGAL; THE AWARD OF JAIL CREDITS WAS NOT AUTHORIZED BY LAW.

II. DEFENDANT'S SENTENCE WAS JUST.

I

Defendant committed the first of the four crimes for which he was sentenced on June 17, 2002. He and a confederate went to the victim's home to settle a dispute about drugs by forcibly demanding money. They had a "slapper" and used it to hit the victim in the back of the head. The blow caused the victim to fall off his couch and slice his finger in a fan. Defendant was arrested on June 18 and released on bail on June 24, 2002.

On July 27, 2002, defendant entered a home without permission and stole handguns. He was arrested on August 9, 2002, and released on bail on November 10, 2002.

On December 6, 2002, defendant, again while on bail, approached a man in a car and struggled with him to get his drugs. Using a handgun, defendant hit the man in the back of the head. He was arrested on December 9 and released on bail on April 4, 2003.

Defendant's trial on the June 17, 2002 robbery was scheduled for August 2003. Although defendant knew he was due in court, he failed to appear and was tried in absentia. The jurors found him guilty of first-degree robbery and other charges arising from the same incident. His failure to appear for this trial is the basis for his conviction of bail jumping.

While a fugitive, defendant was found in Rhode Island in possession of a pistol without a license on October 14, 2003. On

July 26, 2004, he was sentenced in Rhode Island to a ten-year term of imprisonment—four years to be served and six years suspended. On February 13, 2007, defendant was charged with assaulting a Rhode Island correctional officer and sentenced to serve an additional term of imprisonment—nine months of a three-year term.

On completing the custodial sentences he served in Rhode Island—the parties assumed that defendant completed his sentence on the date he waived extradition, January 8, 2008—defendant was returned to the jail in Middlesex County on January 9, 2008. From then until May 22, 2008, he was confined there pending sentencing on the convictions returned in 2003 by the jury to which he was tried in absentia on Indictment 02–09–1179 and, presumably, pending disposition of the charges in the other pending indictments. The sentence on Indictment 02–09–1179 was first imposed on May 22, 2008. Defendant served that sentence until December 14, 2010, when this court reversed the convictions and remanded for a new trial. *State v. Rippy,* No. A–6069–07, 2011 *WL* 6532 (App.Div. Dec. 14, 2010) (slip op. at 5).

Defendant was not released on bail following the reversal of his convictions on December 14, 2010. He was confined pending further proceedings from December 14, 2010 until May 20, 2011, the date sentence was imposed in conformity with the plea agreement on all four indictments at issue here.

Defendant was eighteen years old when he committed these crimes. He had no prior criminal convictions, but he had one prior adjudication of delinquency, and the Family Part had waived its jurisdiction over a charge that was pending prosecution in the Superior Court. Defendant was twenty-seven years old when he was sentenced on these crimes.

II

A

As previously noted, the jail credits at issue on this appeal are controlled by the Supreme Court's decision in *Hernandez.* In-

deed, several of the arguments defense counsel presented at sentencing and the jail credits awarded, are consistent with the Court's interpretation of *Rule* 3:21–8 in *Hernandez*.

Preliminarily, we reject defendant's claim that the State's cross-appeal is improper because the award of jail credits is discretionary. *Hernandez* clearly states that when the conditions for the award of jail credits pursuant to *Rule* 3:21–8 are satisfied, jail credits are "mandatory, not discretionary." *Id.* at 37, 26 *A.*3d 376. In reaching that conclusion, the Court reasoned that uniformity in the award of jail credits is required to avoid sentencing disparity and provide equal treatment. *Id.* at 49, 26 *A.*3d 376. The Court further explained, "there is no room for discretion in either granting or denying credits. Both can promote sentence disparity based on lack of uniformity in exercising discretion." *Id.* at 48–49, 26 *A.*3d 376.

Because *Hernandez* applies, its holding and rationale permit the State to challenge an award of jail credits that is inconsistent with the Supreme Court's interpretation of *Rule* 3:21–8 or *N.J.S.A.* 2C:44–5b, governing gap-time credits. The State may appeal an illegal sentence, *State v. Veney*, 327 *N.J.Super.* 458, 461, 743 *A.*2d 888 (App.Div.2000), and a sentence " 'not imposed in accordance with law' " is illegal. *State v. Acevedo*, 205 *N.J.* 40, 45, 11 *A.*3d 858 (2011) (quoting *State v. Murray*, 162 *N.J.* 240, 247, 744 *A.*2d 131 (2000)). Obviously, the Court's interpretations of a *Rule* or statute are binding decisional law.

Jail credits authorized by *Rule* 3:21–8 "were conceived as a matter of equal protection or fundamental fairness and a means of avoiding the double punishment that would result if no such credits" for pre-sentence confinement were awarded. *Hernandez, supra,* 208 *N.J.* at 36, 26 *A.*3d 376. They provide day-for-day credits for time spent in custody between arrest and imposition of sentence. *R.* 3:21–8; *Hernandez, supra,* 208 *N.J.* at 28, 37, 26 *A.*3d 376. In contrast, gap-time credits awarded pursuant to *N.J.S.A.* 2C:44–5b are intended to address manipulation and delay

by a prosecutor. *State v. Carreker,* 172 *N.J.* 100, 105, 796 *A.*2d 847 (2002). Gap-time credits give a defendant who is sentenced on two separate dates credits against the second sentence for time served following imposition of the first sentence. *Hernandez, supra,* 208 *N.J.* at 38, 26 *A.*3d 376.

The effect of these two types of credits is different. Jail credits are applied to the "front end" of the sentence and reduce a parole ineligibility term that is part of a sentence. *Id.* at 37, 26 *A.*3d 376. "Gap-time credits are applied to the 'back end' of a sentence." *Id.* at 38, 26 *A.*3d 376. Where a parole ineligibility term is not part of the sentence, "gap-time credits will advance the date on which a defendant first becomes eligible for parole." [1] *Id.* at 38–39, 26 *A.*3d 376. Under *Hernandez,* where gap-time credits are applicable, the judge has no discretion to award jail credits instead. *Id.* at 48–49, 26 *A.*3d 376.

*Hernandez* explains the circumstances under which jail credits accrue "for time spent in pre-sentence custody on multiple charges." *Id.* at 45, 26 *A.*3d 376. When a defendant is confined prior to sentencing on multiple charges, the defendant is entitled to "credits against *all sentences* 'for any time served in custody in jail ... between arrest and the imposition of sentence' on each case." *Id.* at 28, 26 *A.*3d 376 (emphasis added) (quoting *R.* 3:21–8). A defendant is entitled to jail credits on all cases for all days of confinement after his arrest in that case and prior to imposition of the first sentence, and that is so even if a subsequent period of confinement is on an arrest for a new charge and regardless of matters of happenstance within the prosecutor's control—such as whether bail on one or more of the prior charges has been revoked. *Id.* at 48–49, 26 *A.*3d 376.

---

[1] Adhering to the Court's longstanding interpretation of how gap-time credits are applied, in *Hernandez,* the Court recognized that there is likely no benefit from gap-time credits for a defendant subject to a seventeen-year period of parole ineligibility on a twenty-year sentence. 208 *N.J.* at 39–41, 26 *A.*3d 376.

After the first sentence is imposed, however, a defendant is not entitled to jail credits for time spent in custody when later sentenced on other pending charges. *Id.* at 50, 26 *A.*3d 376. After the first sentencing, a defendant is entitled to gap-time credits when sentenced on the other pending charges if "(1) the defendant has been sentenced previously to a term of imprisonment, (2) the defendant is sentenced subsequently to another term, and (3) both offenses occurred prior to the imposition of the first sentence." *State v. Franklin,* 175 *N.J.* 456, 462, 815 *A.*2d 964 (2003); *accord Hernandez, supra,* 208 *N.J.* at 38, 26 *A.*3d 376.

In this case, the question whether jail credits can accrue following defendant's first sentencing on Indictment 02–09–1179 is complicated by the fact that the convictions underlying the first sentence imposed on May 22, 2008, were reversed on appeal on December 14, 2010. *Hernandez* states that "once the first sentence is imposed a defendant is only entitled to gap-time credits for time accrued thereafter when sentenced on the other charges." 208 *N.J.* at 47, 26 *A.*3d 376. It also states, "once the first sentence is imposed, a defendant awaiting imposition of another sentence accrues no more jail credit under *Rule* 3:21–8." *Id.* at 50, 26 *A.*3d 376. But *Hernandez,* unlike this case, did not involve a first sentence that was vacated because the underlying convictions were reversed on appeal.

We do not understand the Court's discussion of post-sentencing accrual of jail credits to address the question presented here. Here, the question is whether a defendant is entitled to jail credits for pre-sentence confinement pending retrial that follows the reversal of his first sentence on the first of multiple indictments.

As we understand the Court's description of the imposition of the first sentence as the cutoff date for the accrual of jail credits, the cutoff applies during the period the defendant is serving the first sentence, but it would not apply to a period of confinement that follows the reversal of the convictions for which the first sentence was imposed. There are several factors that lead us to that conclusion.

First, it is well-settled that a defendant who is serving a sentence on one charge is not entitled to jail credits for that time served on another pending charge. *See Carreker, supra,* 172 *N.J.* at 115, 796 *A.*2d 847. Thus, the cutoff of accrual of jail credits at that point is consistent with the long-standing interpretation of *Rule* 3:21–8.

Second, the deprivation of jail credits during the interval between reversal of a conviction and re-conviction and sentencing, would lead to pre-conviction confinement during the hiatus between service of the sentence without any credits. That result would be contrary to the Court's reasoning in *Hernandez,* because it would lead to the double punishment that *Rule* 3:21–8 was "conceived" to avoid. *Hernandez, supra,* 208 *N.J.* at 36, 26 *A.*3d 376.

Third, time spent in jail pending a new trial or plea following the reversal of the underlying convictions is time served in custody after arrest and prior to sentencing for a valid conviction on the pending charges. Thus, such time falls within the terms of *Rule* 3:21–8. *See State v. De Rosa,* 332 *N.J.Super.* 426, 433–35, 753 *A.*2d 1164 (App.Div.2000) (observing that a defendant generally receives jail credits pursuant to *Rule* 3:21–8 for time spent in custody between the reversal of a conviction and sentence upon re-conviction).

In effect, a defendant who is held in custody following reversal of a conviction is in custody pending disposition and sentencing on all charges that are then pending.[2] Accordingly, we reject the State's claim that defendant was entitled to gap-time credits, not jail credits, for the period of confinement beginning on December 14, 2010, with the reversal of the convictions supporting his first sentence, and ending on May 19, 2011, the day before defendant was first sentenced on a pending charge following the

---

[2] *Hernandez* indicates that jail credits cannot turn on matters of happenstance such as the prosecutor's decision to seek or revoke bail on all charges. 208 *N.J.* at 47 n. 18, 48, 26 *A.*3d 376.

reversal of his convictions on Indictment 02–09–1179. He was entitled to jail credits for this period on all of the pending charges for which he had been arrested. *R.* 3:21–8.

The State's remaining objections to the award of jail credits are readily addressed under the rules enunciated in *Hernandez.* As the State acknowledges, defendant was entitled to credits on Indictment 02–09–1179 for the time he served on his first sentence on that indictment prior to reversal of the underlying convictions—May 22, 2008, through December 13, 2010.

The State is also correct in asserting that on the other indictments, defendant was entitled to gap-time credits, not jail credits, for the time spent serving his first sentence on Indictment 02–09–1179 prior to its reversal. When defendant was sentenced on May 20, 2011, all of the conditions for an award of gap-time credits for the time defendant spent serving his prior sentence were satisfied: (1) he had been sentenced to a term of imprisonment on Indictment 02–09–1179 which he partially served during this period; (2) he was being sentenced to a term of imprisonment on these indictments subsequent to the imposition of the sentence on Indictment 02–09–1179; and (3) all the offenses charged in these indictments were committed prior to the imposition of the initial sentence on Indictment 02–09–1179, which was subsequently vacated when the convictions were reversed. *See Franklin, supra,* 175 *N.J.* at 462, 815 *A.*2d 964.

The State is wrong, however, in suggesting that defendant was not entitled to jail credits for the time he spent in custody after completing service of his sentences in Rhode Island and before his initial sentencing on the convictions returned by the jury on Indictment 02–09–1179 in 2003. Between completion of his custodial sentences in Rhode Island and sentencing on the convictions returned by the New Jersey jury in 2003, defendant was not only held pending sentencing on that verdict, there were charges in other indictments pending disposition as well. Under *Hernandez,* defendant's bail status on the other charges pending disposition is a matter of happenstance that is immaterial to jail

credits. 208 *N.J.* at 47 n. 18, 48, 26 *A.*3d 376. Thus, on each of the four indictments, defendant was entitled to jail credits for this period of post-arrest and pre-disposition confinement prior to his sentencing on Indictment 02–09–1179.

Although not noted by either party, there are additional errors in the award of jail credits for the period prior to defendant's first sentencing. Reiterating, *Hernandez* holds that when a defendant is facing multiple charges, the defendant is entitled to "credits against all sentences 'for any time served in custody in jail ... between arrest and the imposition of sentence' on each case." 208 *N.J.* at 28, 26 *A.*3d 376 (quoting *R.* 3:21–8).

That rule applies to all pre-sentence confinement once a defendant has been arrested. Thus, if a defendant is released and subsequently arrested and confined pending release on bail for commission of another offense, defendant is entitled to jail credits for both periods of pre-sentence confinement on the first charge and on the second charge to jail credits for the period of confinement that follows his arrest on that charge.

Defendant did not receive all of the jail credits to which he was entitled for pre-sentence confinement. On each of the three indictments charging crimes committed prior to his bail jumping, defendant was given jail credits for the time between arrest and bail on the charges in that indictment only. He was not given credits for time spent in custody between subsequent arrests and subsequent releases on bail.

For all of the foregoing reasons, a remand for resentencing is needed to correct the errors in the award of credits. To avoid repetition of error on remand, we summarize our conclusions. In doing so, we assume the accuracy of the dates set forth in the record submitted to us on appeal and rely on the assumption made by all involved at the time of the most recent sentencing hearing— that defendant completed service of his custodial sentence in Rhode Island on January 8, 2008. If the record provided on

appeal proves inaccurate on any pertinent dates, the judge should adjust the dates accordingly.

Defendant is entitled to jail credits from the date of his first arrest to his release on bail on the charges in Indictment 02–09–1179. The credits due are from the date of that arrest, June 18, 2002, to the date of that release on bail, June 24, 2002. Jail credits for that confinement are due on Indictment 02–09–1179 only, because that indictment includes the only charges pending against defendant during this period of confinement, which pre-dated defendant's commission of any of the crimes charged in the other three indictments.

Defendant is also entitled to jail credits from August 9, 2002, the date of his second arrest, to November 10, 2002, the date he was released on bail. These credits are due on the first indictment, Indictment 02–09–1179, and on the second indictment, Indictment 08–06–1064, because this confinement followed his arrest for charges in both indictments and because defendant had not been sentenced on either.

Defendant is also due jail credits for his confinement following his arrest for the crimes charged in the third indictment, Indictment 08–06–1065. The credits due are from his arrest on December 9, 2002, through April 4, 2003, when he was released on bail. These jail credits are due on Indictment 02–09–1179, Indictment 08–06–1064 and Indictment 08–06–1065, again, because defendant had been arrested on charges in all three indictments and had not been sentenced on any.

No credits of any sort are due for the time defendant spent serving his sentences in Rhode Island. Indeed, defendant did not seek any credits for that time against any of these sentences.

Jail credits are, however, due on all four indictments from January 9, 2008—the assumed date of the first day following defendant's completion of his custodial sentences in Rhode Island—to May 21, 2008, the day before defendant was sentenced on the convictions returned by the jury after defendant's trial in

absentia in 2003 on Indictment 02–09–1179.[3] During this period of custody, defendant had not been sentenced on any of these crimes and was confined pending sentencing on Indictment 02–09–1179 and disposition and sentencing on the charges in the other three indictments.

On Indictment 02–09–1179 only, defendant is entitled to full credits for the days he spent serving the sentence imposed on Indictment 02–09–1179—May 22, 2008, through December 13, 2010, the day prior to the reversal of his convictions on direct appeal. Those credits should be reflected on the judgment for this indictment as "prior service credit." The judgment in place includes these credits as jail credits. The erroneous characterization of this prior service credit as jail credits does not have any impact on his sentence, but it is inaccurate and likely to cause confusion.

As discussed above, on the other three indictments defendant is not entitled to jail credits from May 22, 2008, through December 13, 2010, because he was serving a sentence during that period. But he is, as discussed above, entitled to gap-time credits for this period. The judge erroneously awarded defendant jail credits for this time on Indictment 08–06–1064 and 08–06–1065 and, for reasons not clear on this record, awarded one day of jail credits, June 26, 2008, on Indictment 08–03–0493.

Defendant is entitled to jail credits on all four indictments for his confinement from December 14, 2010, through May 19, 2011. As previously explained, as a consequence of the reversal of defendant's convictions on Indictment 02–09–1179 on December 14, 2010, from that date until May 20, 2011, when he was sentenced on all four indictments, defendant was confined pending

---

[3] The record on appeal does not indicate when defendant was first charged with bail jumping. Thus, jail credits for this period on that indictment should run from the first date defendant had completed both his custodial sentences in Rhode Island and been charged with bail jumping.

disposition of the charges in all four indictments and no sentence on a valid conviction had been imposed.

On remand, the judge should address credits anew in conformity with this opinion, subject to adjustment of any date we have set forth above that may be required by information not included in the record before us.

B

We turn to consider defendant's objections to his concurrent twenty-year sentences for first-degree robbery. The arguments lack sufficient merit to warrant extended discussion. *R.* 2:11–3(e)(2). The trial judge rejected defense counsel's contentions that defendant's youth mitigated the crimes and that his confinement during service of his sentences in Rhode Island and New Jersey diminished the risk of recidivism. Reasoning that every time defendant had been released he had committed another crime, the judge concluded that defendant had demonstrated that he is "a young man who has no respect for the safety or rights of others" and had done nothing that would permit a finding that defendant had turned himself around. On those factual findings, the judge concluded that there were no mitigating factors and there were three aggravating factors, those set forth in *N.J.S.A.* 2C:44–1a(3), (6) and (9).

Noting that defendant's release from confinement in Rhode Island was delayed by his assault of a correctional officer, we see no basis for disturbing the judge's findings. All of the judge's findings, including those supporting his rejection of defense counsel's arguments on factors in mitigation, are amply supported by the record. These concurrent twenty-year sentences for unrelated first-degree robberies, both involving the use of a weapon and infliction of injury, are neither inconsistent with the sentencing provisions of the Code of Criminal Justice nor shocking to the judicial conscience. *See State v. Bieniek,* 200 *N.J.* 601, 608, 985 *A.*2d 1251 (2010); *State v. Cassady,* 198 *N.J.* 165, 180–81, 966 *A.*2d 473 (2009).

Affirmed in part and remanded for resentencing limited to the calculation of jail and gap time credits. We do not retain jurisdiction.